**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 29, 2021**

# In the Court of Appeals of Georgia

A21A0282. BUCKNER-WEBB et al. v. THE STATE.

RICKMAN, Presiding Judge.

Following Diane Buckner-Webb, Theresia Copeland, Sharon Davis-Williams, Tabeeka Jordan, Micheal Pitts, and Shani Robinson's convictions for conspiracy to violate the Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act, OCGA § 16-14-1 et seq., and other crimes, an attorney was appointed to represent all six of them for their pending motions for new trial. That attorney subsequently filed a motion to withdraw as counsel for the six appellants due to alleged conflicts of interest. After a hearing, the trial court denied counsel's motion to withdraw, but issued a certificate of immediate review and the appellants filed an application in this Court for interlocutory review.

When their application for interlocutory review was denied and their subsequent petition for certiorari was also denied, the appellants claimed that the trial court's order fell within the very small class of interlocutory rulings that are deemed to be final under the collateral order doctrine. Under the collateral order doctrine, an order that does not resolve the entire case in the trial court may be appealed immediately if it "(1) resolves an issue that is 'substantially separate' from the basic issues to be decided at trial, (2) would result in the loss of an important right if review had to await final judgment, and (3) completely and conclusively decides the issue on appeal such that nothing in the underlying action can affect it." (Citation and punctuation omitted.) *Duke v. State*, 306 Ga. 171, 174 (1) (829 SE2d 348) (2019). The appellants' argument fails because the order at issue does not satisfy the second requirement of the collateral order test; that is, the appellants would not lose an important right if appellate review must await final judgment.

In Georgia, the collateral order doctrine has never been applied to authorize a direct appeal from a denial of a motion to withdraw as counsel in a criminal case based on an alleged conflict of interest. The Georgia Supreme Court has recognized that pursuant to the collateral order doctrine, "a very small class of interlocutory rulings are effectively final in that they finally determine claims of right separable

from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." (Citation and punctuation omitted.) *Duke*, 306 Ga. at 172-73 (1). "Thus, an order that satisfies the requirements of the collateral order doctrine is considered to be effectively final and would be appealable because it comes within the terms of a relevant statutory right to appeal final judgments, namely the right prescribed in OCGA § 5-6-34 (a) (1)." (Citation and punctuation omitted.) Id at 173 (1).

Here, the appellants have already been convicted and the motion to withdraw at issue solely concerns their motion for new trial. Should the appellants' motion for new trial be denied they have a right to a direct appeal from that denial. And should this Court determine on appeal that the trial court erred by denying counsel's motion to withdraw then the appellants may be entitled to a new hearing on their motion for new trial. Regardless, appellants will have an avenue to appeal this decision and no important right will be lost by waiting until the proper time for a direct appeal. In their motion to withdraw, the appellants acknowledge this remedy by stating that "[i]f the [trial court] were to require [appellants] to proceed with joint representation,

despite their decisions not to waive an actual conflict, the remedy would be redo any proceeding that was affected by the conflict."

In *Duke v. State*, Duke argued that the trial court's order denying his *pre-trial* motions seeking public funding for expert witnesses and investigators was subject to the collateral order doctrine.[1] *Duke*, 306 Ga. at 171, 174 (1) (emphasis supplied). The Georgia Supreme Court held that the trial court's order at issue was not a collateral order because,

> Duke has acknowledged that his opportunity for appellate review of the order will not be lost if his appeal must await final judgment. Indeed, in his application before this Court, Duke argued that, should he be found guilty, the jury's verdict would likely be set aside on appeal given the importance of expert assistance to the presentation of his defense. Thus, he will not be left without a remedy in the absence of immediate review of the trial court's order by this Court.

Id.

Because the appellants in this case are not left without a future remedy the trial court's order denying defense counsel's motion to withdraw is not a collateral order and this appeal is dismissed. See *Duke*, 306 Ga. at 174 (1); see generally *Riveria v. Washington*, 298 Ga. 770, 777-778 (784 SE2d 775) (2016) (Georgia Supreme Court recognized that the collateral order doctrine applies to a very small class of

---

[1] Interestingly, in *Duke* the remedy would be a new trial, whereas should there be error in this case the remedy would only be a new motion for new trial hearing.

interlocutory rulings and held that the doctrine did not apply to the trial courts' orders denying appellants' motions to dismiss on immunity grounds).

*Appeal dismissed. Dillard, P.J., Mercier, Brown, Pipkin and Colvin, JJ, and Senior Appellate Judge Herbert E. Phipps concur. Gobeil and Hodges, JJ., concur fully and specially. McFadden, C.J., dissents. Doyle, P.J., concurs in judgment only in Division 2, joins with McFadden, C.J., in the dissent to Divisions 1 and 3, and writes specially as to Division 3. Barnes, P.J., Miller, P.J., and Reese, J. join with Chief Judge McFadden's dissent and Presiding Judge Doyle's special dissent. Markle, J. is disqualified.*

# In the Court of Appeals of Georgia

A21A0282.  BUCKNER-WEBB et al. v. THE STATE.

GOBEIL, Judge, concurring fully and specially.

Though the question is close, I am persuaded that the bar for applying the collateral order doctrine in Georgia is a high one, and the doctrine does not apply here given the facts and procedural posture of the decision before us. Accordingly, I concur in the Majority's dismissal of the appeal.

The dissent disagrees with the Majority's application of the collateral order doctrine. And though the issue before us on appeal is a jurisdictional one, the dissent

6

goes on to expound on the merits of the underlying motion to withdraw. In doing so, the dissent raises compelling concerns in the abstract, but it does not focus sufficiently on the facts and circumstances of the case at hand.

Accordingly, and although the underlying merits are beyond the scope of this special concurrence, I feel compelled to highlight a few points. This Court evaluates a trial court's denial of a motion to withdraw under an abuse of discretion standard. See *Odum v. State*, 283 Ga. App. 291, 292 (641 SE2d 279) (2007). Here, the trial court considered the motion and in an in camera hearing, assessed the alleged conflicts, and found nothing to warrant granting the motion.

I am authorized to state that Judge Ken Hodges joins me in concurring fully and specially.

# In the Court of Appeals of Georgia

A21A0282. BUCKNER-WEBB v. STATE.

MCFADDEN, Chief Judge, dissenting.

This appeal is properly before us under the collateral order doctrine. The issue is one of first impression in Georgia. But nearly all the courts that have decided the issue, federal and state, have held that orders denying an attorney's request to withdraw fall within the collateral order doctrine. Once a court compels an attorney to violate ethical obligations, the harm is done.

8

As to the merits of the appeal, the trial judge abused his discretion in denying counsel's motion to withdraw because counsel cannot ethically represent all six defendants due to conflicts of interest. So I respectfully dissent.

1. *Facts and procedural posture.*

The state indicted 35 Atlanta Public School employees for conspiracy to violate the Georgia RICO Act and other offenses arising out of alleged cheating on standardized tests. Of those indicted, twelve were convicted. The jury found one of the defendants not guilty of any charges, found the other eleven defendants guilty of conspiracy to violate the RICO Act, and found some of those defendants guilty of additional offenses. The trial court imposed various sentences of confinement.

Each of those defendants were represented by separate counsel at trial. After the trial, an attorney was appointed through the public defender's office to jointly represent six of the defendants who were indigent and whose trial attorneys had already filed separate motions for new trial.

Upon reviewing the record, the attorney appointed through the public defender's office concluded that his clients' interests were in conflict: that his duties to his several clients would "materially and adversely affect the representation of" one another. See Rule 1.7 (a) of the Georgia Rules of Professional Conduct found at

9

State Bar Rule 4-102. He then advised his clients of his conclusion. They all indicated that, even if waiver of the conflict were permissible, they would not agree to waive it. See Id., Rule 1.7 (b).

The attorney then filed a motion to withdraw as counsel for those six defendants due to conflicts of interest. After a hearing, the trial court denied counsel's motion to withdraw, but issued a certificate of immediate review. The defendants filed an application for interlocutory review, which was denied. They also filed this direct appeal, invoking the collateral order doctrine.

2. *Applicability of the collateral order doctrine.*

The majority finds that we lack jurisdiction because the collateral order doctrine does not apply to the trial court's interlocutory order denying counsel's motion to withdraw. I disagree.

> [T]he collateral order doctrine recognizes that a very small class of interlocutory rulings are effectively final in that they finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. Thus, an order that satisfies the requirements of the collateral order doctrine would be appealable because it comes within the terms of the relevant statutory right to appeal final judgments.

*Roberts v. State*, 309 Ga. 639, 639-640 (1) (847 SE2d 541) (2020) (citations and punctuation omitted). Under the collateral order doctrine, such an interlocutory ruling "may be appealed immediately if it (1) resolves an issue that is substantially separate from the basic issues to be decided at trial, (2) would result in the loss of an important right if review had to await final judgment, and (3) completely and conclusively decides the issue on appeal such that nothing in the underlying action can affect it." *Duke v. State*, 306 Ga. 171, 174 (1) (829 SE2d 348) (2019) (citation and punctuation omitted).

The majority does not address the first and third requirements. They are clearly satisfied in this case. Denial of the motion to withdraw resolved an issue substantially separate from the basic issues to be decided at trial. And that denial conclusively decided the issue of withdrawal such that nothing in the underlying action can affect it. See generally *State v. Rowe*, 308 Ga. 806, 810 (2) (b) (843 SE2d 537) (2020) (holding in pertinent part that an order sealing certain records was substantially separate from the criminal prosecution and that the order conclusively decided that issue). The majority holds, however, that the second requirement of the doctrine has not been satisfied because denial of the motion to withdraw could be challenged in an appeal after final judgment.

But the majority has not cited, and I have not found, any Georgia cases squarely addressing the issue of whether a trial court's denial of a motion to withdraw as counsel in a criminal case due to conflicts of interest is directly appealable under the collateral order doctrine. But plainly, as held by federal authority discussed below, the collateral order doctrine does apply because counsel would suffer an irretrievable loss.

A bar rule is at issue. Rule 1.7 (a) provides: "A lawyer shall not represent or continue to represent a client if there is a significant risk that . . . the lawyer's duties to another client . . . will materially and adversely affect the representation of the client, except as permitted in (b)." Subsection (b) sets out the limited circumstances and the procedures under which a client can waive a conflict. "The maximum penalty for a violation of this Rule is disbarment." Rule 1.7 (c). This court and the superior court are without power to immunize counsel from that penalty.

Contrary to the majority ruling, the issue before us is not squarely addressed in our Supreme Court's decision in *Duke*, supra. *Duke* does address the scope of the collateral order doctrine's requirement of irretrievable loss of an important right. But it does so in a context too different from the present case to be instructive. *Duke* did not involve the denial of a motion to withdraw due to conflicts of interests. Rather it

12

held that review after final judgment was an adequate remedy for a very different issue: denial of requests for certain pretrial funding. Id. at 174 (1).

It is true, as the majority finds, that the denial of the motion to withdraw could be enumerated as error in an appeal after a final judgment. But reversal of that final judgment based on an erroneous denial of the motion to withdraw would not undo the harm to counsel of having been compelled to commit an unethical act — especially one that could result in disbarment.

In the absence of controlling Georgia authority, we turn to foreign authority. In particular, we look to federal collateral order case law in developing "Georgia's version of the doctrine. See *Patterson v. State*, 248 Ga. 875, 875-877 (287 SE2d 7) (1982) (looking to federal collateral order case law in developing the doctrine under Georgia law); *Scroggins v. Edmondson*, 250 Ga. 430, 432 (297 SE2d 469) (1982) (same)." *Warren v. State*, 297 Ga. 810, 811 n. 2 (778 SE2d 749) (2015).

"[N]early all of the courts which have decided this issue, federal and state, have held that orders denying an attorney's request to withdraw fall within the collateral order doctrine." *In re Franke*, 55 A3d 713, 717 (I) (Md. App. 2012). As detailed below, the United States Courts of Appeals for the Second, Third, Fourth, Sixth, and Seventh Circuits have so held. And a Georgia district court in the Eleventh Circuit

13

has also recognized the applicability of the doctrine to the denial of an attorney's motion to withdraw. See *Brown v. United States*, 2009 U. S. Dist. LEXIS 9022 at *17-18 (IV) (C) (S. D. Ga. 2009) (noting that counsel could have directly appealed interlocutory order denying his motion to withdraw under the collateral order doctrine). I have found no federal circuit court opinions that agree with the majority's view. Nor did the court of last resort of the District of Columbia find any opinions agreeing with the majority's view when it addressed the issue: "The [federal] appellate courts that have decided the question have held that an order denying an attorney's motion to withdraw satisfies [the collateral order doctrine's] three conditions and thus is immediately appealable." *Galloway v. Clay*, 861 A2d 30, 32 (II) (D.C. App. 2004) (citations and footnote omitted). And "[t]he major treatise writers appear to endorse this holding. See 19 MOORE'S FEDERAL PRACTICE § 202.07 [1] (3d ed. 2004) at 202-29 et seq.; 15B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3914.21 (2d ed. & Supp. 2004) at 40-41." Id. See also *Brandon v. Blech*, 560 F3d 536, 537 (II) (6th Cir. 2009) (order compelling an attorney to continue representation is the sort of order the collateral order doctrine contemplates because it conclusively determines the withdrawal question, is unrelated to the merits, and cannot be rectified after a final judgment);

14

*Fidelity National Title Ins. Co. of New York v. Intercounty National Title Ins. Co.*, 310 F3d 537, 539 (7th Cir. 2002) (denial of attorney's request to withdraw was immediately appealable as a collateral order); *Whiting v. Lacara*, 187 F3d 317, 319-320 (a) (2d Cir. 1999) (denial of counsel's motion to withdraw satisfied the three requirements of the collateral order doctrine).

In the criminal context, as in the civil, the collateral order doctrine is no less applicable to the denial of a motion to withdraw as counsel.

> Although the weight of the authority holding that orders denying motions to withdraw are collaterally appealable is civil in nature, the reasons for applying the collateral order doctrine are equally compelling in the criminal context. . . . The ethical violations counsel would be forced to commit for conflicts of interest are the same in the civil and criminal context. Once a court compels an attorney to violate ethical obligations, the harm is done, whether the matter be a civil or a criminal trial.

*United States v. Bellille*, 962 F3d 731, 737 (II) (3rd Cir. 2020). Thus, a denial of counsel's "motion to withdraw [where] there [is] a conflict of interest would be effectively unreviewable because the harm of violating one's ethical obligations would be complete and could not be undone after [final judgment in the] trial [court]." Id. See also *United States v. Oberoi*, 331 F3d 44, (2d Cir. 2003) ("Because the [trial] court's order [denying the motion to withdraw] conclusively determined the

15

issue of [counsel's] continued representation of [defendant] and cannot be effectively reviewed on final appeal, we have jurisdiction over this interlocutory appeal."); *Whiting*, supra at 320 (a) ("[O]nce a final judgment has been entered, the harm to [counsel] will be complete, and no relief can be obtained on appeal.") (citations omitted).

The reasoning of these federal courts is persuasive. Here, the harm to counsel of being forced to violate his ethical obligations by representing clients with conflicting interests would be complete and effectively unreviewable after a final judgment below. "The injury to a counsel forced to represent [multiple] client[s] against his will is . . . irreparable, and the [trial] court's decision would be effectively unreviewable upon final judgment." *Whiting*, supra at 320 (citations omitted). Accord *United States v. Shaw*, 2009 U. S. App. LEXIS 2004 (4th Cir. 2009) (exercising jurisdiction over defendant's direct appeal from denial of counsel's motion to withdraw under the collateral order doctrine because the order is one "affecting rights that will be irretrievably lost in the absence of an immediate appeal").

The majority makes no effort rebut counsel's showing that he would suffer irremediable harm if forced to commit an ethical violation, particularly one for which an available penalty is disbarment. Instead the majority looks for irremediable harm

16

to the clients and finds none. In so doing, the majority disregards the case law from other jurisdictions — including the federal courts — which finds irremediable harm to counsel from denial motion to withdraw sufficient to justify review under the collateral order doctrine. As noted above, our Supreme Court has made a practice of "looking to federal collateral order case law in developing the doctrine under Georgia law." *Warren v. State*, 297 Ga. 810, 811, 778 S.E.2d 749, 752, n. 2 (2015). We should do so too.

That said, these defendants will be harmed if they are forced to be represented by conflicted counsel. A particular strategic choice might be optimal for one client, sub-optimal for another, and harmful to a third. Such conflicts are especially likely here, given the evidence of top-down pressure to cheat and of these defendants' differing levels of authority. A criminal defendant is "entitled to representation on appeal by effective, i.e., conflict-free, counsel as a matter of constitutional law." *Garland v. State*, 283 Ga. 201, 203 (657 SE2d 842) (2008). That right is guaranteed by the Sixth Amendment. *United States v. Gonzalez-Lopez*, 548 U.S. 140 (126 SCt. 2557, 165 LE2d 409 (2006) (addressing right to retained counsel of choice). See also *Hall v. Jackson*, ___ Ga. ___ (2) (a) (Case No. S20A1574, decided February 1, 2021) (criminal defendants in Georgia are constitutionally entitled to effective assistance

17

of counsel, which includes the right to representation that is free of actual conflicts of interests).

It follows that "[w]e have jurisdiction to consider [this] appeal under the collateral order doctrine . . . [since the trial] court's denial of [the] motion to withdraw as counsel satisfies each of the three requirements [of the doctrine] and is therefore immediately appealable." *United States v. Barton*, 712 F3d 111, 116 (I) (2d Cir. 2013) (citations and punctuation omitted). See also *United States v. Culbertson*, 598 F3d 40, 49 (III) (B) (2d Cir. 2010) ("orders denying motions for attorneys to withdraw as counsel . . . meet the requirements of the collateral order doctrine"); *Brown v. United States*, supra (counsel could have directly appealed denial of his motion to withdraw under the collateral order doctrine). So the instant appeal should not be dismissed on jurisdictional grounds.

3. *Merits of the motion to withdraw as counsel.*

The defendants correctly assert that the trial court erred in denying their attorney's motion to withdraw as counsel. Denial of the motion to withdraw would be sustainable only if the trial court had determined that no real conflict of interest exists.

When defense counsel advises the trial court before or at trial that he is laboring under an actual conflict of interest, the court usually must defer to that representation and appoint new counsel for the defendant, as the attorney is in the best position to be aware of conflicting interests and makes the representation as an officer of the court. The trial court may, however, explore the adequacy of the basis of defense counsel's representation regarding a conflict of interests without improperly requiring disclosure of the confidential communications of the client. *If the trial court does not determine that no real conflict of interest exists but still denies a request for new counsel based on an attorney's representation that a conflict of interest exists, reversal is required.*

*Williams v. State*, 302 Ga. 404, 409 (3) (807 SE2d 418) (2017) (citations and punctuation omitted; emphasis added).

Georgia's requirement of an affirmative determination that no real conflict exists is consistent with the holding of the United States Supreme Court that violations of the Sixth Amendment right to counsel "are structural error." *United States v. Gonzalez-Lopez*, 548 U.S. 140 (126 SCt. 2557, 165 LE2d 409) (2006) (addressing right to retained counsel of choice). The consequences of structural error "are necessarily unquantifiable and indeterminate." Id. at 150. Structural error is not subject to harmless error analysis. "Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe." Id.

At the end of the hearing in the present case on the motion to withdraw, the trial court announced that he would deny the motion and explained that counsel's

19

showing was not "specific enough." That explanation is inconsistent with the required affirmative determination that no real conflict of interest exists. If the record could sustain a finding that no real conflict exists, a remand for that determination would be in order. But it cannot.

Counsel averred in his motion to withdraw that there were actual conflicts of interests in jointly representing the defendants that would require him to omit issues that he would otherwise raise, that all six defendants had declined to waive the conflicts, and that the General Counsel's office of the State Bar of Georgia had orally advised him[2] that he could not ethically continue representing the defendants due to the conflicts. At the hearing on the motion, counsel explained that the six defendants worked at different levels of authority within the school system, from executive directors to classroom teachers, so the strength of the evidence against each defendant differed based on their respective positions in the hierarchy. And, as noted above, they received different verdicts at trial. Counsel advised the trial court that he could not ethically represent the defendants because he would have to make claims comparing the relative strength of the evidence against each defendant and he would

_____

[2]The office of the General Counsel of the State Bar of Georgia offers such guidance through its Ethics *Helpline*, 404-527-8741, 800-682-9806.

20

be unable to raise certain issues that would benefit some defendants while harming others, thereby pitting one defendant against another.

Counsel cited, as the clearest examples of potentially viable issues that could not be properly raised due to the conflicting interests, claims regarding severance of defendants and claims regarding compelled statements of public employees under *Garrity v. New Jersey*, 385 U. S. 493 (87 SCt 616, 17 LE2d 562) (1967). And he further advised the court that the conflicts would limit his ability to raise multiple other fair trial issues concerning evidentiary rulings, cross-examination of witnesses, and ineffective assistance of counsel.

As noted above, "[a] criminal defendant in Georgia is constitutionally entitled to the effective assistance of counsel during his trial, motion for new trial proceeding, and direct appeal. One component of the right to the effective assistance of counsel is the right to representation that is free of actual conflicts of interests." *Hall v. Jackson*, supra (citations and punctuation omitted). An actual conflict of interests exists "when the conflict significantly and adversely affects the appellate lawyer's representation of the defendant." Id. at ___ (2) (a). See also *Tanner v. State*, 303 Ga. 203, 207 (2) (811 SE2d 316) (2018) (An actual conflict of interest "adversely affects

counsel's performance, [and is] not just a mere theoretical division of loyalties.") (citation and punctuation omitted).

In this case, contrary to the trial court's ruling, counsel showed that there are actual conflicts of interests, not a mere theoretical division of loyalties, because his "inability to raise what [he] believe[s] to be valid . . . claims in the amended motion for new trial [and on appeal will] significantly and adversely affect[ his] representation of [the defendants]." *Hall*, supra at ___ (2) (a). See also *State v. Abernathy*, 289 Ga. 603, 605 (1) (715 SE2d 48) (2011) ("A significant effect on the representation may be found, for example, where counsel is shown to have refrained from raising a potentially meritorious issue due to the conflict[.]") (citation omitted).

Because counsel showed that there exist actual conflicts of interests that would cause him to refrain from raising potentially meritorious issues, the trial court abused its discretion in denying the motion to withdraw. See *Bourassa v. State*, 345 Ga. App. 463, 471 (2) (811 SE2d 113) (2018) ("We review a trial judge's decision on a counsel's motion to withdraw for abuse of discretion."), vacated on other grounds 306 Ga. 329 (830 SE2d 189) (2019). The trial court's ruling therefore should be reversed.

I am authorized to state that Presiding Judge Barnes, Presiding Judge Miller, Presiding Judge Doyle and Judge Reese join in this dissent.

22

# In the Court of Appeals of Georgia

A21A0282. BUCKNER-WEBB et al. v. THE STATE.

DOYLE, Presiding Judge.

I join with the dissent in Divisions 1 and 3 fully, but join Division 2 as to judgment only. In addition, I write separately to Division 3 to point out that based upon my review of the record, the trial court clearly abused its discretion by denying defense counsel's motion to withdraw.

23

In *Glasser v. United States*,[3] the United States Supreme Court held that criminal defendants have a Sixth Amendment right to assistance of counsel that is "untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests."[4] "Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial."[5]

> [S]ince the decision in *Glasser*, most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted . . . [because t]he attorney representing [multiple] defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.[6]

---

[3] 315 U. S. 60 (62 SC 457, 86 LE 680) (1942).

[4] Id. at 70.

[5] *Cuyler v. Sullivan*, 446 U. S. 335, 346 (100 SC 1708, 64 LE2d 333) (1980).

[6] (Punctuation omitted.) *Holloway v. State*, 435 U. S. 475, 486 (II) (98 SCt 1173, 55 LE2d 426) (1978). We note that in this case the trial court was considering a motion to withdraw based on defense counsel's representations of conflicts of interest arising in preparation of a motion for new trial, as opposed to appellate consideration of an ineffective assistance of counsel argument based on trial counsel's concurrent representation of multiple defendants. See, e.g., *Tolbert v. State*, 298 Ga. 147, 148-157 (2) (a)-(d) (780 SE2d 298) (2015).

A trial court may "explor[e] the adequacy of the basis of defense counsel's representations regarding a conflict of interests without improperly requiring disclosure of the confidential communications of the client."[7] In doing so, however, it must "refrain from embarrassing counsel in the defense of an accused by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court."[8]

In this case, after a hearing and ex parte conference with defense counsel on the motion, the trial judge announced in open court that he had not heard conflicts of interest "specific enough" with regard to defense counsel's joint representation of all six defendants, and he noted that he found that "the conflicts . . . are not sufficient to require severance and new counsel."[9] The court's acknowledgment

---

[7] *Holloway*, 435 U. S. at 487.

[8] (Punctuation and emphasis omitted.) Id. at 486, quoting *Glasser*, 315 U. S. at 71, 76.

[9] As the dissent notes, defense counsel gave clear examples of appellate arguments he would be unable to make if he represented all of the defendants due to conflicting interests, including claims regarding severance, compelled statements of public employees, evidentiary rulings, cross-examination, and ineffective assistance of counsel.

25

that defense counsel did, however, provide an least *an* example of a conflict required the court to grant the motion to withdraw.[10]

Instead, the trial court repeatedly pressed defense counsel for more specific examples of the conflict. The court was understandably angry about the delay caused by the public defender's office's decision to assign a single attorney to represent the six indigent defendants when it was known at the outset there could be a conflict and about the two-and-a-half years it took defense counsel to review the trial transcript to identify potential appellate arguments.[11] The court also expressed concern on multiple occasions about the cost to the State to fund separate counsel for each of the defendants. And when trial counsel advised the court that giving detailed examples of the conflict would require him to violate his

---

[10] See *Holloway*, 435 U. S. at 485; *Williams v. State*, 302 Ga. 404, 409 (3) (807 SE2d 418) (2017) (holding that if a trial court determines "that [a] real conflict of interest exists but still denies a request for new counsel based on an attorney's representation that a conflict of interest exists, *reversal is required*") (emphasis supplied).

[11] For example, at one point, in response to defense counsel's comment that continuing to representing all six defendants was a conflict of interest that might result in his professional discipline, the trial court stated, "Well, I feel like giving you some discipline right now. What I would like to do is just pull a trapdoor and have some alligators down there is what I would like to do when you come to this court two and a half years [later when] everybody is waiting, why, why – and you are not even close to being through with the brief, are you?"

26

ethical obligations, the trial court again improperly pressed for more specificity and intimated that as long as the court ordered the defense counsel to represent all six defendants, counsel could not be disciplined, regardless of whether the representation was unethical or harmful to the defendants.[12]

In light of defense counsel's "representations as an officer of the court regarding . . . conflict[s] of interest," the trial court abused its discretion by denying the motion to withdraw.[13]

I am authorized to state that Presiding Judge Barnes, Presiding Judge Miller, and Judge Reese join in this dissent.

---

[12] See *Holloway*, 435 U. S. at 485 (holding that even though "defense counsel might have presented the requests for appointment of separate counsel more vigorously and in greater detail[,] . . . the trial court's responses hardly encouraged pursuit of the separate-counsel claim . . . and as to presenting the basis for that claim in more detail, defense counsel was confronted with a risk of violating, by more disclosure, his duty of confidentiality to his clients.").

[13] Id. at 485.